UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DEREK MORTLAND, | ) | CASE NO.: _____ |
| | ) | |
| Plaintiff, | ) | **CIVIL RIGHTS** |
| | ) | |
| vs. | ) | **COMPLAINT FOR INJUNCTIVE** |
| | ) | **RELIEF AND DAMAGES:** |
| RILEY HOTEL GROUP LLC, | ) | |
| d/b/a BLUTIQUE HOTEL, | ) | **1ST CAUSE OF ACTION:** For Denial of |
| | ) | Access by a Public Accommodation in |
| & | ) | Violation of the Americans with Disability |
| | ) | Act of 1990 ("Title III" and "ADA"), |
| HISTORIC UNITED BUILDING, LLC, | ) | 42 U.S.C. §§ 12181 *et seq.* |
| | ) | |
| Defendants. | ) | |

Plaintiff DEREK MORTLAND Complains of Defendants RILEY HOTEL GROUP LLC, doing business as BLUTIQUE HOTEL, and HISTORIC UNITED BUILDING, LLC, and alleges as follows:

**INTRODUCTION:**

1. This is a civil rights action for discrimination against persons with physical disabilities, of which plaintiff MORTLAND is a member of, for failure to remove architectural barriers structural in nature at Defendant's property, a place of public accommodation, thereby discriminatorily denying plaintiff access to, the full and equal enjoyment of, opportunity to participate in, and benefit from, the goods, facilities, services, and accommodations thereof. MORTLAND seeks injunctive relief pursuant to the Americans with Disability Act of 1990 ("title III" AND "ADA"), *et sec.*

2. MORTLAND is a person with physical disabilities who, on or about January 15,

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 1

2020 through January 16, 2020, was an invitee, guest, patron, or customer at Defendants' property, which houses a hotel, the BLUTIQUE HOTEL, located at 1 South Main Street, Akron, OH 44308. At said time and place, Defendants failed to provide proper legal access to the property, which is a public accommodation and/or public facility. The denial of access was in violation of federal legal requirements, and MORTLAND suffered violations of his civil rights to full and equal access and was physically injured, embarrassed and humiliated.

**JURISDICTION AND VENUE:**

3.      **Jurisdiction**: This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

4.      **Venue**: Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and is founded on the facts that the real property which is the subject of this action is located in this district, in the City of Akron, County of Summit, State of Ohio and that MORTLAND's causes of action arose in this district.

**PARTIES:**

5.      MORTLAND is a "physically handicapped person," a "physically disabled person," and a "person with physical disabilities." (Hereinafter the terms "physically disabled," "physically handicapped" and "person with physical disabilities" are used interchangeably, as these words have similar or identical common usage and legal meaning.) MORTLAND is a "person with physical disabilities," as defined by all applicable United States laws. MORTLAND requires the use of a wheelchair to travel about in public. Consequently, MORTLAND is a member of that portion of the public whose rights are protected.

6.      Defendant RILEY HOTEL GROUP LLC, doing business as BLUTIQUE HOTEL, an

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 2

Ohio Limited Liability Company, and Defendant Historic United Building LLC, an Ohio

Limited Liability Company, (jointly referred to as "Defendants") are the owners and operators,

lessors and/or lessees, or agents of the owner, lessor and/or lessee, franchisors and/or

franchisees, of the building and/or buildings which constitute a public facility in and of itself,

occupied by the BLUTIQUE HOTEL, located at 1 South Main Street, Akron, OH 44308

(hereinafter "the business"), and subject to the requirements of the Americans with Disability

Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, and to all other legal

requirements referred to in this complaint.

7.   The business is open to the general public and conducts business therein. The

business operating on said premises is a public accommodation.

8.   At all times relevant to this complaint, Defendants are the landlords/lessors,

tenants/lessees and the owners and operators of the business. As such, Defendants are jointly and

severally responsible to identify and remove architectural barriers pursuant to Code of Federal

Regulations section 36.201(b), which states in pertinent part:

§ 36.201        **General**

(b) Landlord and tenant responsibilities. Both the landlord
who owns the building that houses a place of public
accommodation and the tenant who owns or operates the place of
public accommodation are public accommodations subject to the
requirements of this part. As between the parties, allocation of
responsibility for complying with the obligations of this part may
be determined by lease or other contract.

CFR §36.201(b)

9.   MORTLAND does not know the true names of Defendants, their business capacities,

their ownership connection to the property and business, nor their relative responsibilities in causing the access violations herein complained of. MORTLAND is informed and believes that the Defendants herein are a public accommodation, and are the agents, ostensible agents, masters, servants, employers, employees, representatives, franchisors, franchisees, partners, and associates, or such similar capacity, of each of the other Defendants, if any, and was at all times acting and performing, or failing to act or perform, within the course and scope of his, her or its authority as agent, ostensible agent, master, servant, employer, employee, representative, franchiser, franchisee, partner, and associate, or such similar capacity, and with the authorization, consent, permission or ratification of each of the other Defendants, and is responsible in some manner for the acts and omissions of the other Defendants in legally causing the violations and damages complained of herein, and have approved or ratified each of the acts or omissions of each other defendant, as herein described. MORTLAND may seek leave to amend when the true names, capacities, connections, and responsibilities of Defendants are ascertained.

**PRELIMINARY FACTUAL ALLEGATIONS:**

10. Defendants are the entity that is a public accommodation that owns, leases (or leases to), or operates the business. The business and each of its facilities are places "of public accommodation" subject to the requirements of the Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.* On information and belief, said facility has undergone "alterations, structural repairs and additions," each of which has subjected the business to handicapped access requirements.

11. MORTLAND is a person with a disability. MORTLAND is a "physically disabled person," as defined by all applicable United States laws. MORTLAND is paralyzed as a result of

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 4

a spinal cord injury and requires the use of a wheelchair for mobility and to travel in public.

12. At all times referred to herein and continuing to the present time, Defendant advertised, publicized and held out the business as being handicapped accessible and handicapped usable.

13. On or about January 15, 2020 through January 16, 2020, MORTLAND was an invitee and guest at the business, arriving for purposes of obtaining lodging.

14. Upon his arrival, during his patronizing of the public accommodation, and upon his exit of the facility, MORTLAND personally encountered architectural barriers which denied him the full and equal access to the property.

15. Therefore, at said time and place, MORTLAND, a person with a disability, encountered the following inaccessible elements of the business which constituted architectural barriers and a denial of the proper and legally required access to a public accommodation to persons with physical disabilities. By way of example and not as an exhaustive inventory of Defendant's violations, the following barriers to access were personally encountered by MORTLAND:

   a. *The Market Street entrance is not located on an accessible route from the public parking facility in violation of 2010 ADAS Section: 206.2.1.*

   b. *At the side entrance near Market Street, the door is equipped with both a closer and a latch and there is no latch side clearance in violation of 2010 ADAS Section: 404.2.4.1 and 2009 ANSI A117.1 Section: 404.2.3.3, 404.2.3.2.*

   c. *At the side entrance near Market Street, the door opening does not provide at least 32 inches between the face of the door and the opposite stop inviolation of 2010 ADAS Section: 404.2.3 and 2009 ANSI A117.1 Section: 404.2.2.*

    d.   *At the Main and Market corner entrance, the landing at the entrance door exceeds 2% slope in violation of 2010 ADAS Section: 404.2.4.4 and 2009 ANSI A117.1 Section: 404.2.3.1.*

    e.   *At the Main and Market entry corner, the walkway in front of the corner door contains abrupt vertical edges and/or variations over a ¼ inch in violation of 2010 ADAS Section: 303.3, 303.2 and 2009 ANSI A117.1 Section: 303.3, 303.2.*

    f.   *At the Main entry, the walkway on Main St. contains abrupt vertical edges and/or variations over a 1/4 inch in violation of 2010 ADAS Section: 303.3, 303.2 and 2009 ANSI A117.1 Section: 303.3, 303.2.*

    g.   *At the Main entry, the accessible path of travel contains cross slopes greater than 2% in violation of 2010 ADAS Section: 403.3 and 2009 ANSI A117.1 Section: 403.3.*

    h.   *At the main entry, the ramp does not have compliant handrails in violation of 2010 ADAS Section: 505.1 and 2009 ANSI A117.1 Section: 505.1.*

    i.   *At the main entry, the lower level Main St. entry doors do not provide at least 32 inches between the face of the door and the opposite stop in violation of 2010 ADAS Section: 404.2.3 and 2009 ANSI A117.1 Section: 404.2.2.*

    j.   *At the Main St. entry, at the time of arrival the only unlocked entrance was the revolving door, which is not accessible. The Main St. entry door that was accessible was locked. The lower level Main St. entry doors were not accessible because of their narrow openings. They were also locked in violation of 2010 ADAS Section: Advisory, 2009 ANSI A117.1 Section: Advisory, Recommended.*

    k.   *At the lobby area, the reception counter is too high in violation of 2010 ADAS Section: 904.4.2, 904.4.1 and 2009 ANSI A117.1 Section: 904.3.*

    l.   *At the hotel bar, the bar does not have a low seating space in violation of 2010 ADAS Section: 226.1.*

    m.   *At the platform lift, the maneuvering space on the pull side of the door does not adequately extend beyond the latch side of the door in violation of 2010 ADAS Section: 404.2.4.1 and 2009 ANSI A117.1 Section: 404.2.3.2, 404.2.3.3.*

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 6

n.  At the platform lift, the platform lift requires assisted entry/exit in violation of 2010 ADAS Section: 410.1 and 2009 ANSI A117.1 Section: 410.1.

o.  At the platform lift, the accessible wheelchair lift ramp slope exceeds the maximum running slope (direction of travel) allowable of 8.33%. Existing running slope is 20.2% in violation of 2010 ADAS Section: 405.2 and 2009 ANSI A117.1 Section: 405.2.

p.  In room 411, the maneuvering space on the pull side of the door does not adequately extend beyond the latch side of the door in violation of 2010 ADAS Section: 404.2.4.1 and 2009 ANSI A117.1 Section: 404.2.3.2, 404.2.3.3.

q.  In room 411, the door operating hardware is too high. 66" AFF in violation of 2010 ADAS Section: 404.2.7 and 2009 ANSI A117.1 Section: 404.2.6.

r.  In room 411, the sign providing direction and information is non-compliant in violation of 2010 ADAS Section: 216.3 and 2009 ANSI A117.1 Section: 703.1.2.

s.  In room 411, the top of the sink is too high in violation of 2010 ADAS Section: 606.3 and 2009 ANSI A117.1 Section: 606.3.

t.  In room 411, the maneuvering space on the pull side of the bathroom door does not adequately extend beyond the latch side of the door in violation of 2010 ADAS Section: 404.2.4.1 and 2009 ANSI A117.1 Section: 404.2.3.2, 404.2.3.3.

u.  In room 411, the maneuvering clearance inside the restroom door exceeds 2% slope in violation of 2010 ADAS Section: 404.2.4.4, 404.2.4.4 Exception 1 and 2009 ANSI A117.1 Section: 404.2.3.1 , 304.2 Exception , 305.2 Exception.

v.  In room 411, the side grab bar does not extend far enough from the rear wall in violation of 2010 ADAS Section: 604.5.1 and 2009 ANSI A117.1 Section: 604.5.1.

w.  In room 411, the rear grab bar does not extend adequately past the toilet on the wide side in violation of 2010 ADAS Section: 604.5.2 and 2009 ANSI A117.1 Section: 604.5.2.

x.  In room 411, the toilet clearance is not deep enough in violation of 2010 ADAS Section: 604.8.1.1 and 2009 ANSI A117.1 Section: 604.9.2.1.

y.   In room 411, the towels are not accessible. There is not enough clear floor space under the obstruction (toilet) in violation of 2010 ADAS Section: 308.2.2 and 2009 ANSI A117.1 Section: 308.2.2.

z.   In room 411, the clear floor space only allows for a forward approach and the towel rack is out of reach range. 60" AFF in violation of 2010 ADAS Section: 308.2.2 and 2009 ANSI A117.1 Section: 308.2.2.

aa.  In room 411, the mirror is mounted too high. 47" AFF in violation of 2010 ADAS Section: 603.3 and 2009 ANSI A117.1 Section: 1002.11.2.2.

bb.  In room 411, the coat hook is installed greater than 48 inches above the finished floor. 66" AFF in violation of 2010 ADAS Section: 308.2.1 and 2009 ANSI A117.1 Section: 308.2.1.

cc.  In room 411, the shower compartment is missing a seat in violation of 2010 ADAS Section: 608.4.

dd.  In room 411, the 30 inches minimum by 60 inches minimum clear floor space required at the shower is not flat (2% or 1:48 maximum slope) in all directions in violation of 2010 ADAS Section: 305.2 and 2009 ANSI A117.1 Section: 305.2.

ee.  In room 411, the water and drain pipes under the lavatory are not adequately insulated in violation of 2010 ADAS Section: 606.5 and 2009 ANSI A117.1 Section: 606.6, 1003.12.4.4.

ff.  In room 411, the 30 inches minimum by 48 inches minimum clear floor space required at the lavatory is not flat (2% or 1:48 maximum slope) in all directions in violation of 2010 ADAS Section: 305.2 and 2009 ANSI A117.1 Section: 305.2.

gg.  In room 411, the drape wands are not accessible because there is not adequate clear floor space for an approach in violation of 2010 ADAS Section: 305.3 and 2009 ANSI A117.1 Section: 305.3.

hh.  In room 411, the work surface is too high in violation of 2010 ADAS Section: 902.3 and 2009 ANSI A117.1 Section: 902.4, 902.5.2.

ii.  In room 411, the outlet is too low and is out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1.

jj.  In room 411, the refrigerator shelf and storage is too low and is out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1.

kk.  In room 411, the climate control is too high and is out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1.

ll.  In room 411, the over bed lamps are not accessible because there is not adequate clear floor space for either a forward or side approach in violation of 2010 ADAS Section: 305.3 and 2009 ANSI A117.1 Section: 305.3.

mm.     In room 411, the lamp switches are too high and out of the maximum reach range for a side approach in violation of 2010 ADAS Section: 308.3.1 and 2009 ANSI A117.1 Section: 308.3.1.

nn.  In other guest rooms, accessible guest rooms may not be dispersed among the various classes of sleeping accommodations in violation of 2010 ADAS Section: 224.5.

oo.  In other guest rooms, there are not enough accessible rooms designed with mobility features in violation of 2010 ADAS Section: 224.2.

pp.  In the fitness center, the fitness center was not checked for compliance at the initial visit. As an additional Rule 34 inspection is required to check for compliance with room dispersion requirements and the provision of additional mobility accessible guest rooms, the fitness center can also be assessed at that time in violation of 2010 ADAS Section: Advisory and 2009 ANSI A117.1 Section: Advisory, Recommended.

16. The discriminatory violations described in ¶ 15 are not an exclusive list of the Defendants' violations. MORTLAND requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the Americans with Disability Act of 1990 ("title III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*

17. At all times stated herein, the existence of architectural barriers at Defendant's place of public accommodation evidenced "actual notice" of Defendant's intent not to comply

with the Americans with Disability Act of 1990 ("title III" and "ADA"), 42. U.S.C. §§ 12181 *et seq.*, either then, now or in the future.

18. As a legal result of Defendant's failure to act as a reasonable and prudent public accommodation in identifying, removing or creating architectural barriers, policies, practices and procedures that denied access to MORTLAND and other persons with disabilities, MORTLAND suffered damages as alleged herein.

19. As a further legal result of the actions and failure to act of Defendant, and as a legal result of the failure to provide proper handicapped-accessible public facilities as set forth herein, MORTLAND was denied his civil rights to full and equal access to public facilities. MORTLAND suffered a loss of his civil rights and his rights as a person with physical disabilities to full and equal access to public facilities, and further suffered from physical injury, shame, humiliation, embarrassment, anger, chagrin, disappointment and worry, expectedly and naturally associated with a person with physical disabilities being denied access, all to his damages as prayed hereinafter in an amount within the jurisdiction of this court. The ADA violations which MORTLAND encountered make wheelchair use dangerous, and difficult – or impossible - for MORTLAND and other qualified individuals with disabilities to travel safely to and from the business, and within the business. Travel is taxing on MORTLAND's body since negotiating inaccessible areas requires much twisting of the spine, and overuse of shoulders and wrists, and these various barriers to access dishearten and frustrate him. Travel in inaccessible areas also causes unnecessary wear and tear on MORTLAND's wheelchair.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 10

20. MORTLAND is "physically handicapped," "physically disabled," or a "person with physical disabilities" who was denied his rights to equal access to a public facility by Defendants. Defendants maintained a public establishment without access for persons with physical disabilities as stated herein, and continues as of the date of filing this complaint to deny equal access to MORTLAND and other persons with physical disabilities in these and other ways.

21. On information and belief, construction alterations carried out by Defendants have triggered access requirements under Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*

22. MORTLAND, as described herein below, seeks injunctive relief to require the business to be made accessible to meet the requirements of the Americans with Disabilities Act, so long as Defendants operate and/or lease the business as a public facility.

23. On information and belief, Defendants have been negligent in their affirmative duty to identify the architectural barriers complained of herein and negligent in the removal of some or all of said barriers.

24. Because of Defendants' violations, MORTLAND and other persons with physical disabilities are unable to use public facilities such as those owned and operated by Defendants on a "full and equal" basis unless such facility is in compliance with the provisions of the Americans with Disabilities Act. MORTLAND seeks an order from this court compelling Defendants to make the business accessible to persons with disabilities.

25. MORTLAND is informed and believes and therefore alleges that Defendants caused the subject property to be constructed, altered and maintained in such a manner that persons with

physical disabilities were denied full and equal access to, within and throughout said facility of

the business and were denied full and equal use of said public facility. Further, on information

and belief, Defendants have continued to maintain and operate said facility in such conditions up

to the present time, despite actual and constructive notice to such Defendants that the

configuration of the establishment and/or its building(s) is in violation of the civil rights of

persons with physical disabilities, such as MORTLAND and the disability community. Such

construction, modification, ownership, operation, maintenance and practices of such public

facilities are in violation of law as stated in the Americans with Disability Act of 1990 ("TITLE

III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*

      26. On personal knowledge, information and belief, the basis of Defendants' actual

and constructive notice that the physical configuration of the facilities including, but not limited

to, architectural barriers constituting the business was in violation of the civil rights of persons

with physical disabilities, such as MORTLAND, includes, but is not limited to, communications

with invitees and guests, owners of other establishments and businesses, notices Defendants

obtained from governmental agencies upon modification, improvement, or substantial repair of

the subject premises and other properties owned by the Defendants, newspaper articles and trade

publications regarding the Americans with Disabilities Act and other access laws, public service

announcements, and other similar information. Defendants' failure, under state and federal law,

to make the establishment accessible is further evidence of Defendants' conscious disregard for

the rights of MORTLAND and other similarly situated persons with disabilities. The scope and

means of the knowledge of Defendants are within Defendants' exclusive control and cannot be

ascertained except through discovery. Despite being informed of such effect on MORTLAND

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 12

and other persons with physical disabilities due to the lack of accessible facilities, Defendants knowingly and willfully refused to take any steps to rectify the situation and to provide full and equal access for MORTLAND and other persons with physical disabilities to the establishment. Said Defendants have continued such practices, in conscious disregard for the rights of MORTLAND and other persons with physical disabilities, up to the date of filing of this complaint, and continuing thereon.

27. MORTLAND will return to the BLUTIQUE HOTEL to obtain lodging, if the business made fully accessible to a disabled person in a wheelchair, and to also avail himself of the business' services; he cannot return there because the business is not accessible for a person using a wheelchair.

28. MORTLAND frequently travels to and stays in the Akron and Summit County, Ohio area for business and for personal matters. Therefore, MORTLAND has a history, pattern, and frequency of visiting Akron, Ohio.

29. During the dates in question here, January 15, 2020 through January 16, 2020, MORTLAND's purpose for visiting the Akron area and the business was for professional purposes; MORTLAND is the President of Advanced Access, LLC, where he acts as an expert in accessibility. On January 16, 2020, MORTLAND was retained to evaluate certain businesses for accessibility in Boardman, Ohio and in Northfield, Ohio. Additionally, as an advocate to the disabled, MORTLAND met with members of the disability community and Open Gate Fair Housing in Stow, Ohio.

30. Additionally, MORTLAND's purpose for visiting the business was to test certain public accommodations for accessibility under the Americans with Disabilities Act.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 13

31. MORTLAND visited the business because, one, the location of the hotel was convenient for his business needs, two, multiple dining options were available to him without the need for driving, and three, his colleagues and friends live in or near the business.

32. Should the business become accessible, MORTLAND will visit it again because, one, he enjoyed the business' amenities and location, two, it is in close proximity to his colleagues and friends, and three, MORTLAND intends to return to the business as an ADA tester on an annual basis, beginning in 2020, in order to ascertain whether Defendants removed the barriers to access which are the subject of this litigation.

I.    **FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §12101, *et seq.*)**

33.    MORTLAND pleads and incorporate by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 27 of this complaint.

34.    Pursuant to law, in 1990, the United States Congress made findings per 42 U.S.C. §12101 regarding persons with physical disabilities, finding that laws were needed to more fully protect:

> some 43 million Americans with one or more physical or mental disabilities; [that] historically society has tended to isolate and segregate individuals with disabilities; [that] such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; [that] the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals; [and that] the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous.

35.    Congress stated as its purpose in passing the Americans with Disabilities Act of

1990 (42 U.S.C. §12102):

> It is the purpose of this act (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and (4) to invoke the sweep of Congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day to day by people with disabilities.

36.     As part of the Americans with Disabilities Act of 1990, (hereinafter the "ADA"), Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (Section 301 42 U.S.C. §12181, *et seq*.). Among the public accommodations identified for purposes of this title was:

> (7) PUBLIC ACCOMMODATION - The following private entities are considered public accommodations for purposes of this title, if the operations of such entities affect commerce -
> ***
> (A) an inn, hotel, motel or other place of lodging ***.
>
> 42  U.S.C. §12181(7)(A).

37.     Pursuant to §302, 42 U.S.C. §12182, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation."

38.     The specific prohibitions against discrimination set forth in §302(b)(2)(a), 42 U.S.C. §12182(b)(2)(a) are:

> (i) the imposition or application of eligibility criteria

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 15

that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

(ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

(iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

(iv) a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable; and

(v) where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages or accommodations available through alternative methods if such methods are readily achievable.

The acts of Defendant set forth herein were a violation of MORTLAND's rights under the ADA, 42. U.S.C. §§ 12181 *et seq.*

39.     The removal of the barriers complained of by MORTLAND as hereinabove alleged was at all times after January 26, 1992 "readily achievable" as to the business pursuant to 42 U.S.C. §12182 (b)(2)(A)(i)-(iv). On information and belief, if the removal of all the barriers

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 16

complained of herein together was not "readily achievable," the removal of each individual barrier complained of herein was "readily achievable." On information and belief, Defendants' failure to remove said barriers was likewise due to discriminatory practices, procedures and eligibility criteria, as defined by §302(b)(2)(a)(i)-(iii); 42 U.S.C. §12182 (b)(2)(A)(i).

40.     Per §301(9), 42 U.S.C. §12181 (9), the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." The statute defines relative "expense" in part in relation to the total financial resources of the entities involved. MORTLAND alleges that properly repairing, modifying, or altering each of the items that plaintiff complains of herein were and are "readily achievable" by the Defendant under the standards set forth under §301(9) of the Americans with Disabilities Act. Further, if it was not "readily achievable" for Defendants to remove each of such barriers, Defendants have failed to make the required services available through alternative methods which were readily achievable.

41.     On information and belief, construction work on, and modifications of, the business occurred after the compliance date for the Americans with Disabilities Act, January 26, 1992, independently triggering access requirements under Title III of the ADA.

*42.*     Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12188, *et seq.*, §308, MORTLAND is entitled to the remedies and procedures set forth in §204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as plaintiff is being subjected to discrimination on the basis of disability in violation of this title or have reasonable grounds for believing that he is about to be subjected to discrimination in violation of §302. MORTLAND cannot return to or make use of the public facilities complained of herein so long as the premises and Defendants' policies bar full and equal use by persons with physical disabilities.

43.     Per §308(a)(1) (42 U.S.C. 12188), "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title does not intend to comply with its provisions." Pursuant to this last section, MORTLAND has not returned to Defendants' premises since on or about January 15, 2020 through January 16, 2020, but on information and belief, alleges that Defendants have continued to violate the law and deny the rights of plaintiff and of other persons with physical disabilities to access this public accommodation. Pursuant to §308(a)(2), "In cases of violations of §302(b)(2)(A)(iv) . . . injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title."

44.     MORTLAND seeks relief pursuant to remedies set forth in §204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to federal regulations adopted to implement the Americans with Disabilities Act of 1990, including but not limited to an order granting injunctive relief and attorneys' fees. MORTLAND will seek attorneys' fees conditioned upon being deemed to be the prevailing party.

Wherefore, plaintiff prays for relief as hereinafter stated.

**PRAYER:**

Wherefore, MORTLAND prays that this court grant relief and damages as follows:

**I.      PRAYER FOR FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §1 2101, et seq.)**

1.      For injunctive relief, compelling Defendants to make the business readily accessible to and usable by individuals with disabilities; and to make reasonable modifications in

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 18

policies, practice, eligibility criteria and procedures so as to afford full access to the goods,

services, facilities, privileges, advantages and accommodations being offered.

2.      For attorneys' fees, litigation expenses and costs of suit, if MORTLAND is

deemed the prevailing party; and

3.      For such other and further relief as the court may deem proper.

Respectfully submitted,

BLAKEMORE, MEEKER & BOWLER CO., L.P.A.

/s/ *COLIN G. MEEKER*
COLIN G. MEEKER (Ohio Bar No. 0092980)
495 Portage Lakes Dr.
Akron, Ohio 44319
Telephone: (330) 253-3337
Facsimile: (330) 253-4131
cgm@bmblaw.com

Attorney for Plaintiff DEREK MORTLAND